## W. L. GELLING V. STATE.

No. 25,210. January 30, 1952.
Mandate by Supreme Court of the United States,
Reversing Case, Filed July 3, 1952.

Hon. R. M. Nichols, Judge Presiding.

*Robert H. Park*, Beaumont, and *Philip J. O'Brien, Jr.*, and *Herbert Wechsler*, both of New York, N. Y. for appellant.

*Gaines Baldwin*, City Attorney, Marshall; *Price Daniel*, Attorney General of Texas; *E. Jacobson*, Assistant Attorney General, and *George P. Blackburn*, State's Attorney, all of Austin, for the state.

BEAUCHAMP, Judge.

Appellant was tried in the county court of Harrison County on October 24th, 1950, and was found guilty by a jury which assessed a fine of $200.00 on a complaint charging him with unlawfully exhibiting a motion picture contrary to an ordianace of the city of Marshall.

The case was tried de novo on appeal from the corporation court. The facts show that he exhibited a picture that was objectionable to the duly appointed board of censors of the city of Marshall, after they had notified him of their disapproval of the picture and instructed him not to exhibit the same.

The facts of the case are without dispute. The name and character of the picture exhibited are immaterial. The objection which was lodged against the picture by the board of censors is immaterial to the discussion of this case, because it is not claimed that they abused the discretion lodged in them, but the contention is made that the ordinance was invalid and the reasons relied upon are the basis for this opinion.

This case was submitted before this court some months ago and has been on the desk of the writer and has been examined by other judges of the court, through that period of time, at permissible intervals. The questions raised have required and received extensive investigation, but the importance of other cases on a crowded docket have superseded the questions in this case in the matter of final decision. Hence the delay.

There are certain questions involving the regularity of the passage of the ordinance, but the only questions that we will discuss to any extent involve the application of the First and Fourteenth Amendments to the Constitution of the United States.

The attorneys on both sides have filed extensive briefs which have been very helpful in coming to a conclusion on the questions raised. Much of the discussion in appellant's brief has been along the line of contentions made in other cases which have been before several courts in recent years and may be denominated as an eloquent plea that this court overrule the holding of the Supreme Court of the United States in Mutual Film Corp. v. Industrial Commission of Ohio, 236 U. S. 230, decided in 1915. After careful consideration of this case and many of the cases which have followed and referred to it, particularly those cited by appellant, we have come to the conclusion that the most logical and positively correct expression is found in the case of RD-DR Corporation, et al v. Smith, et al, 183 Fed. 2d 562, opinion by Chief Judge Hutcheson of the U.S. Court of Appeals, New Orleans. Having so concluded, we content ourselves with following that opinion after first stating some of the contentions made in appellant's brief.

The brief reviews the evidence of appellant and calls attention to his statement that the picture involved had been reviewed by both Life and Look, magazines that are sold and distributed in Marshall. Apparently the position is that since this was done there is no point in barring the picture, regardless of what it may be. The position is taken, further, that the motion picture, to the extent that it partakes of the features of the magazines in the field of entertainment and education, is entitled to the same protection as the press and entitled to the same freedom. On the subject and in behalf of this position, I doubt if we could find or that there may be presented a stronger argument than that in appellant's brief. Most of it has been discussed and referred to in other reported cases, but there is one feature that especially attracts our attention as being new and different. The extent of the investment in the show houses and in equipment and fixtures approximate $100,000, which is a substantial investment in property and building. The thought is that this investment indicates a permanence and removes a fear discoverable in the Mutual case as to the responsibility of the exhibitors. An examination of the Mutual case does not impress us that the court was moved to any degree by such a fear. Even in 1915 the position of the motion picture seems to have been well established. Further answer to the interesting discussion on this subject is not called for.

Neither do we find in the reported cases "that there is an indication" in recent Supreme Court decisions "that there has

been a shift of emphasis in the court's attitudes." The opinions of the several Federal district courts and appellate courts, speaking on the subject, have not pointed out a discoverable change of sentiment helpful to appellant in the question. We pretermit discussion of the several cases placed in appellant's brief and confine our thinking, chiefly, to Judge Hutcheson's opinion in RD-DR Corporation, et al v. Smith, et al, supra.

The question discussed in that opinion is based on what appears to be the same contention made by appellant in his brief in the instant case, that is that the Mutual Film Corporation v. Industrial Commission of Ohio, supra, has either been superseded or that the drift of the opinions of the Supreme Court of the United States has been so far from the position taken by that court in 1915 that we cannot rely upon the opinion in that case as controling in the case now before us. As we view the brief, it is conceded by appellant that the Mutual case is in point and decisive and that it sustains the position of the state in the instant case. Such would be our conclusion even in the absence of any such admission. However, much we have been enlightened by the brief, we are not in accord with the conclusions which it asks us to reach. The Supreme Court of the United States may extend the Fourteenth Amendment to include motion pictures, and thus nationalize the industry and remove it from state and municipal control, but we are not expecting this until it has done so, and certainly will not yield that important function on behalf of the state and the municipality until we are forced to do it. We respect the decisions of that great court to the extent that we do not feel that we should speculate on a change of sentiment and a reversal of its sound opinions of so long standing. To engage in guessing what the court is going to do next is not to follow its decisions as contemplated by the oath which the members of this court take. We do not hesitate to comply with that oath when the decisions of that court have been given. We are firmly entrenched in our position that we should not depart from its decisions even if we were faced with uncertainties, a fact we do not admit. We find that the Supreme Court of the United States has frequently had opportunity to re-consider its holding in the Mutual case and that it has consistently refrained from doing so.

As stated by Judge Hutcheson, in the opinion referred to, we see no useful purpose in reviewing the several attacks which have been made and which have failed to secure any modification of the holding in the Mutual case. We think the opinion

was an expression of the law, a correct interpretation of the Fourteenth Amendment as applied to the matter before the court at that time, and we find no reasonable ground for a change of the application even at this distant day. We cannot concede that the motion picture industry has emerged from the business of amusement and become propagators of ideas entitling it to freedom of speech. If in fact circumstances have developed surrounding the industry, whereby television can bring to the youth of our cities, and even of rural areas, matters which are improper and even though magazines of a type are circulated through the U. S. mails which present ideas derogatory to the proper development of good citizens, yet we cannot concede that this has divested the municipal authorities of a right to regulate such subjects. If some are exposed to evil, if evil it be, there is within such fact no argument that other and all evil should be strewn in the path of our youth. The desire of a great industry to reap greater fruits from its operations should not be indulged at the expense of Christian character, upon which America must rely for its future existence. Every boy and every girl reaching manhood or womanhood is, to an extent, the product of the community from which he comes. If the citizens of that community are divested of all power to surround them with wholesome entertainment and character building education then their product will go forth weak indeed. If the community surrenders its power voluntarily, if the state does, then we may expect our Federal Government to move into fields with which it should not be encumbered and in which it cannot best serve. Our loyalty to our government is based on an appreciation for its efficiency. We cherish the history of a Federal Government which has been based on a constitution as solid as the rocks and whose constancy is not shifted by the changing winds. It is the duty of this court, and of all courts, to follow the mandates and stay within the powers of our constitutional provisions. This is fundamental. To speculate on its meaning, to predict a change in the attitudes of the court toward it, is contrary to our ever thinking.

Other questions raised by this appeal have been considered and are deemed to be of little importance. We cannot sustain them. The judgment of the trial court is affirmed.